## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

RICKY D. KYLE,

      Plaintiff,

v.                                                      Case No.  5:19-cv-21-MCR/MJF

ANDREW M. SAUL,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

      Plaintiff Ricky D. Kyle brings this action under 42 U.S.C. § 405(g) to seek review of a final adverse decision of the Commissioner of the Social Security Administration. The Commissioner denied his application for Disability Insurance Benefits ("DIB"). Plaintiff timely pursued and exhausted his administrative remedies.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The undersigned, therefore, respectfully recommends that the decision of the Commissioner be affirmed.[1]

_____

[1] This case has been referred to the undersigned pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 71.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*.

## I.    Procedural History

On January 26, 2016, Plaintiff protectively filed an application for DIB. He alleged that the onset date of his disability was March 1, 2011. (Tr. 15, 83-84, 167-68).[2] His application was denied both initially and on reconsideration. (Tr. 82, 92). Plaintiff requested an administrative hearing before an Administrative Law Judge ("ALJ"). On December 12, 2017, the ALJ held an administrative hearing. At this hearing, Plaintiff—through his counsel—moved to amend his alleged onset date to December 31, 2014. (Tr. 35).

On April 4, 2018, the ALJ issued a written decision granting Plaintiff's motion to amend the onset date and finding that Plaintiff was "not disabled" as defined by the Social Security Act ("Act") from the alleged onset date, December 31, 2014, through the date last insured December 31, 2014. (Tr. 15-25). Plaintiff sought review of the ALJ's decision from the Appeals Council, and the Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

---

[2] All references to "Tr." refer to the transcript of the SSA record filed on August 21, 2019. The page numbers cited herein are those found on the bottom right-hand corner of each page of the transcript rather than the page numbers which were assigned by the court's electronic docketing system.

## II.    Findings of the ALJ

In denying Plaintiff's claims, the ALJ made the following findings relevant to the issues raised in this appeal:

(1) Plaintiff met the insured status requirement of the Act on December 31, 2014;

(2) Plaintiff did not engage in any substantial gainful activity during the period from his amended alleged onset date of December 31, 2014 through his date last insured;

(3) Through the date last insured, Plaintiff had the following severe impairments: osteoarthritis of the knees and midfoot, depression, and anxiety. After the date last insured, Plaintiff had the following severe impairments: obesity, varicose veins and chronic venous insufficiency of the bilateral lower extremities, hypertension, diabetes, history of gout, and obstructive sleep apnea.

(4) Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the list impairments.

(5) Through the date last insured, Plaintiff's had the Residual Functional Capacity ("RFC") to perform no more than light work with the following limitations:

(a) He would need the availability of a sit/stand option such that he could change positions at 30-minute intervals if needed.

(b) He should never climb ladders, ropes, or scaffolds.

(c) He could occasionally climb ramps or stairs.

(d) He could occasionally balance, stoop, and crouch, but he could never kneel or crawl.

(e) He could occasionally perform foot pedal operations.

(f) He should avoid all exposure to workplace hazards such as unprotected heights or moving machinery.

(g) He should not perform driving as a job duty.

(h) He would be absent one day monthly.

(i) He would be off-task less than 10% of the workday.

(6) Through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

(7) Plaintiff was not under a disability, as defined by the Act, at any time from the alleged onset date of December 31, 2014 through the date last insured, December 31, 2014.

(Tr. 17-25).

## III.  Standard

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a

result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). But a "determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991). The Commissioner's decision will not be disturbed, therefore, only if the decision is supported by substantial evidence *and* the Commissioner applied proper legal standards. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Lewis*, 125 F.3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Lewis*, 125 F.3d at 1439. The reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even

if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)-(g),[3] the Commissioner analyzes a disability claim in five steps:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairments?

3.    Does the individual have any severe impairments or combination of impairments that meet or equal those listed in 20 C.F.R. Part 404?

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims. *See* 20 C.F.R. §§ 404, 416. Therefore, citations of statutes or regulations found in quoted court decisions in this report and recommendation should be considered to refer to the appropriate parallel provision.

4.     Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?

5.     Do the individual's impairments prevent other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.    Plaintiff's Medical History

Prior to the date late insured,[4] Plaintiff received treatment primarily for cellulitis in his legs. (Tr. 371-77, 379-86). In May 2010, medical records indicate that Plaintiff suffered from morbid obesity. (Tr. 381). In June 2010, Plaintiff was admitted to Bay Medical Center for "Right leg cellulitis, failed outpatient treatment

---

[4] In discussing Plaintiff's medical history, the undersigned omits detailed discussion of Plaintiff's mental impairments (depression and anxiety), because in this appeal Plaintiff does not assert any grounds for reversal with respect to these mental impairments.

at the Infusion Center." In the discharge notes, Plaintiff was diagnosed with several impairments, including morbid obesity. (Tr. 371).

On January 13, 2015, Plaintiff was examined at St. Andrew Community Medical Center to establish primary health care and obtain assistance with medications. (Tr. 246). These records indicate that Plaintiff weighed 325 pounds and was 69 inches tall. (*Id.*). Plaintiff complained of various symptoms including ankle and knee pain. (*Id.*). Plaintiff had some difficulty standing due to knee pain, but his gait was steady. (Tr. 248). Plaintiff had 5/5 lower extremity muscle strength, full range of motion in the upper and lower extremities, and normal reflexes. (*Id.*). Treatment notes from January 29, 2015, reflect similar findings. (Tr. 255).

In March 2015, treatment notes reflect that Plaintiff's obesity was treated conservatively. (Tr. 344-45). Plaintiff was advised to lose weight through diet and exercise. (*Id.*). On May 26, 2015, Plaintiff underwent a sleep study for obstructive sleep apnea. (Tr. 266-70). Plaintiff reported more daytime alertness with use of a CPAP machine. (Tr. 336, 353). Plaintiff's hypertension and history of gout were well-controlled with medication. (Tr. 327, 330, 333, 335, 341, 344-45, 353). Similarly, Plaintiff took medication for pre-diabetes. (Tr. 256, 325-27, 329-31).

Through July 2015, Plaintiff received specialized treatment for his vein disorders, but treatment was conservative in nature. (Tr. 291-305, 336, 346). Records indicate that more aggressive treatment for edema and circulation issues did not

occur until October 2015. (Tr. 307-321, 332). Radiology notes from September 7, 2015, reflect that Plaintiff's left ankle and left knee osteoarthritis had worsened. (Tr. 287-89).

## V.    Discussion

Plaintiff claims that the ALJ improperly determined that his obesity became a severe impairment only after the date last insured, and he therefore failed to consider the impact of Plaintiff's obesity in conjunction with his bilateral knee osteoarthritis on his ability to perform only "light work" on a regular and consistent basis. (Doc. 15 at 2).

When the evidence in the record shows that a claimant is diagnosed with obesity, Social Security regulations provide that the ALJ shall consider a claimant's obesity in determining whether "(1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirement of a listed impairment, and (4) the impairment bars claimant 'from doing past relevant work and other work that exists in significant numbers in the national economy.'" *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (quoting SSR 02-1P).

### A.    Step Two

With respect to Plaintiff's obesity, the ALJ found that, through the date last insured, Plaintiff's obesity was not a severe impairment, but the ALJ also held that

Plaintiff's obesity became a severe impairment after the date last insured. (Tr. 17). Plaintiff argues that because the ALJ erroneously determined that Plaintiff's obesity "manifested itself after the date last insured," the ALJ could not have properly considered Plaintiff's obesity at subsequent stages of the analysis. (Doc. 15 at 3).

At step two of the analysis, the ALJ must consider whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). A severe impairment is an impairment that significantly limits a plaintiff's physical or mental ability to do basic work activities. *See* 20 C.F.R § 404.1520(c); 20 C.F.R. § 404.1522(a) (defining non-severe impairments as an impairment that "does not significantly limit your physical or mental ability to do basic work activities").

If the ALJ concludes that the claimant's alleged impairment or combination of impairments are not severe, the ALJ must end the analysis and find that the claimant is "not disabled." 20 C.F.R. § 404.1520. In other words, step two "acts as a filter; if no severe impairment is shown the claim is denied." *Jamison*, 814 F.2d at 588; *McDaniels v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (holding that step two is a threshold inquiry, which allows "only claims based on the most trivial impairments to be rejected").

To proceed to step three, the ALJ need only identify one severe impairment.

*See Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 675 (11th Cir. 2015) ("The finding of 'any severe impairment' is sufficient for the ALJ to proceed to the third step."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[I]t is apparent that there is no need for an ALJ to identify every severe impairment at step two."); *Jamison*, 814 F.2d at 588 (noting that the ALJ correctly identified at least one severe impairment and correctly proceeded to step three). So long as the ALJ considers all of Plaintiff's impairments when determining the Plaintiff's capacity to work at steps three and beyond, any omission during step two is of no consequence. *Tuggerson-Brown*, 572 F. App'x at 951-52; *Perry v. Astrue*, 280 F. App'x 887, 893-94 (11th Cir. 2008).

Plaintiff argues that the ALJ erred in "explicitly finding" that Plaintiff's obesity did not exist until after the date last insured because Plaintiff's obesity was present since May 2010. (Doc. 15 at 3-4, 13). But the ALJ did not "explicitly find" this. (Tr. 17). Rather, the ALJ found Plaintiff's obesity was not a "severe impairment" until after the date last insured. Notably, the ALJ gave great weight to the medical record dated January 13, 2015, which was performed approximately two weeks after the date last insured. (Tr. 21). She relied on this record to conclude that Plaintiff was obese. (Tr. 18). Additionally, she discussed obesity throughout her decision.

To the extent Plaintiff argues that the ALJ erred in not finding Plaintiff's

obesity to be a severe impairment at step two, Plaintiff has failed to show reversible error. In making his argument, Plaintiff points to two medical records—one from May 2010 and another from June 2010—which indicate that Plaintiff's Body Mass Index ("BMI") would be deemed "extreme" under Social Security guidelines. (*Id.* at 15). This does not necessarily equate to a severe impairment, however. *See* SSR 02-1P, 2002 WL 34686281, at *4 ("There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment. Neither do descriptive terms for levels of obesity (*e.g.*, 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes."). Nor is a mere diagnosis of obesity sufficient to establish a severe impairment. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (holding that the mere existence of impairments does not reveal the extent to which they limit the claimant's ability to work or undermine the ALJ's determination in that regard); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (holding that the severity of an impairment "must be measured in terms of its effect upon the ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"). Rather, Plaintiff was required to provide evidence that his obesity caused limitations on his ability to perform basic work activities.

Both parties agree that a discussion of Plaintiff's obesity in his medical record is scant prior to the date last insured. In fact, Plaintiff cites only two records from

prior to the date last insured—noted above—which merely diagnosed Plaintiff as obese. Plaintiff has not directed this court to any medical records indicating that there were additional limitations caused by Plaintiff's obesity prior to the date last insured. Due to the paucity of the medical evidence, there was substantial evidence for the ALJ to determine that Plaintiff's obesity was not a severe impairment until after the date last insured.

Furthermore, even if the mere diagnosis of obesity was sufficient to establish a severe impairment, the ALJ was not required to identify each severe impairment at step two, so long as she discussed each impairment—severe and non-severe—in the following stages. As discussed below, the ALJ took into account Plaintiff's obesity at each of the following steps of the analysis. Therefore, this court does not find any reversible error as to step two.

### B.    Steps Three, Four, and Five

Plaintiff also argues that the ALJ could not have considered Plaintiff's obesity at later steps of the analysis because she "explicitly found that Mr. Kyle's obesity did not exist until after the date last insured." (Doc. 15 at 13).  Specifically, at step three, Plaintiff argues that the ALJ's mere statement that she considered Plaintiff's obesity at step three is insufficient because she could not have considered Plaintiff's obesity after purportedly finding that it did not exist prior to Plaintiff's date last insured. (*Id.* at 14).

An ALJ must consider all impairments, "regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). At step three, "the Commissioner must consider whether a claimant suffers from a medical condition which meets or equals a 'listed impairment.'" *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 487 (11th Cir. 2015). When no individual impairment meets a listing, the ALJ must consider whether a combination of impairments is medically equivalent to a listing. *Tuggerson-Brown*, 572 F. App'x at 951 (citing 20 C.F.R. § 404.1526; *Wilson v. Barnhart*, 284 F. 3d 1219, 1224 (11th Cir. 2002)). In other words, at step three, the ALJ "must consider the applicant's medical condition as a whole" in determining whether "the applicant has a severe impairment or a combination of impairments"—severe or not—"that qualify as a disability." *Jamison v. Bowen*, 814 F.2d at 588 (11th Cir. 1987).

The Eleventh Circuit has held that an ALJ's statement that he reviewed the entire record and found that the claimant "did not have an impairment or combination of impairments" that equaled a listing after consideration of the impairments, is "sufficient to demonstrate that the ALJ considered the cumulative effect of the applicant's impairments." *Tuggerson-Brown*, 572 F. App'x at 951 (citing *Wilson*, 284 F.3d at 1224-25); *Jones*, 941 F.2d at 1533.

As noted above, the ALJ did not explicitly find that Plaintiff's obesity manifested itself only after his date last insured. Rather, the ALJ found that Plaintiff's obesity became a severe impairment after the date last insured. (Tr. 17). Additionally, the argument that the ALJ did not consider the Plaintiff's obesity is belied by the record. At step three, the ALJ specifically found:

> The claimant is obese. Treatment notes indicated the claimant was 69 inches tall and weighed 325 pounds (Ex. 1F/2). The claimant had a Body Mass Index (BMI) of 48.0 kg/m2. While there is no listing specifically for obesity, pursuant to SSR 02-1p, an assessment should be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Consequently, I have considered the combined effects of obesity with the claimant's other severe impairments, and finds [sic] that the claimant's obesity has resulted in significant limitations in his ability to do basic work activities, as discussed below, and is therefore a severe impairment under 20 CFR 404.1522 and SSR 96-3p.

(Tr. 19).

On the surface, the ALJ's conclusion relating to obesity contradicts her finding—at step two—that Plaintiff's obesity was a non-severe impairment prior to the date last insured. (Tr. 17). Additionally, the ALJ cited provisions of the Social Security regulations that define non-severe impairments. (Tr. 19 (citing 20 C.F.R. § 404.1522)). Defendant argues that the ALJ's conclusion—"the claimant's obesity has resulted in significant limitations in his ability to do basic work activities . . . and is therefore a severe impairment"—is a "scrivener's error." (Doc. 17 at 9). Defendant further argues that this error is harmless because the medical evidence cited by the

ALJ does not reflect any greater limitation than those already assessed on Plaintiff's ability to work as of December 31, 2014. (*Id.* at 10.).

"[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Newsome ex rel. Bell v. Barnhart*, 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006) (citing *Miller v. Barnhart,* 182 F. App'x. 959, 960 (11th Cir. 2006)); *Wright v. Barnhart*, 153 F. App'x. 678, 684 (11th Cir. 2005); *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983). "No principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is a reason to believe that remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *see Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) (holding that a remand is not warranted if it would amount simply to an empty exercise). Here, despite the inconsistency of the ALJ's determination that obesity was a non-severe impairment at step two and a severe impairment at step three, the ALJ clearly considered Plaintiff's obesity and determined that at step three Plaintiff's obesity and other impairments did not equal a listing. (Tr. 18-19). The record also indicates that the ALJ considered Plaintiff's obesity in steps four and five and found that the medical records did not support a more-restrictive RFC.

At steps four and five, the ALJ indicated that—despite Plaintiff's allegations that his obesity caused him to be disabled—the medical records showed that Plaintiff

suffered from less severe limitations than Plaintiff alleged. Specifically, the ALJ indicated that Plaintiff's obesity was treated conservatively through diet and exercise, which would be consistent with a finding that Plaintiff could perform light work. (Tr. 22, 344-45); *see Broz v. Astrue*, No. 3:07cv204/RV/EMT, 2008 WL 1995084, at *15 (N.D. Fla. May 5, 2008) (holding that "the record suggests that Plaintiff's obesity did *not* impose any additional restrictions, as his physician-fully aware of Plaintiff's obesity-believed that Plaintiff was capable of physical exercise, which is consistent with a finding that Plaintiff was capable of performing light work.").

Additionally, the ALJ noted that Plaintiff's medical records from approximately two weeks after the date last insured indicated that Plaintiff had normal range of motion, 5/5 lower extremity muscle strength, and a steady gait. (Tr. 23). After reviewing the medical records and the evidence of limitations of these impairments—specifically, including Plaintiff's obesity—the ALJ determined that the record supported the RFC she assigned to Plaintiff. (Tr. 22); *see Sutton v. Colvin*, No. 1:13-cv-00163-MP-GRJ, 2014 WL 4627428, at *6 (N.D. Fla. Sept. 15, 2014) (holding that there "there is no question that the ALJ took Plaintiff's obesity into account in evaluat[ing] Plaintiff's RCF" when the ALJ expressly referred to and relied upon evidence indicating that the plaintiff could perform limited range of light work when that record considered the plaintiff's height and weight). Plaintiff has not

pointed to evidence in the record indicating that his already-diminished RFC was further reduced by his obesity. *See Cassiani v. Comm'r of Soc. Sec.*, No. 2:17-cv-196-FtM-MRM, 2018 WL 2980011, at *4-5 (M.D. Fla. June 14, 2018). Because the ALJ considered Plaintiff's impairments as a whole—including obesity—at steps three through five, Plaintiff has failed to establish reversible error.

## VI.    Conclusion

The Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); *Lewis*, 125 F. 3d at 1439; *Foote*, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, the undersigned respectfully **RECOMMENDS** that:

1.    The decision of the Commissioner be **AFFIRMED**, and this action be **DISMISSED.**

2.    **JUDGMENT** be entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.    The clerk of the court be directed to close the case file.

At Panama City, Florida this <u>19th</u> day of June, 2020.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3- 1; 28 U.S.C. § 636**.